## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: ) | | Chapter 7 |
| ) | | Case No. 19-11221-MSH |
| **KEVIN ANDERSON,** ) | | |
| ) | | |
| Debtor ) | | |
| ) | | |

### MEMORANDUM OF DECISION REGARDING ASSUMPTION AND REAFFIRMATION OF MOTOR VEHICLE LEASES

The process of personal property lease assumptions by individual chapter 7 debtors is governed by section 365(p)(2) of the Bankruptcy Code,[1] which provides in subpart A: "the debtor may notify the creditor in writing that the debtor desires to assume the lease" and "[u]pon being so notified, the creditor may, at its option, notify the debtor that it is willing to have the lease assumed by the debtor and may condition such assumption on cure of any outstanding default on terms set by the contract." Bankruptcy Code § 365(p)(2)(A). Subpart B states that: "If, not later than 30 days after notice is provided under subparagraph (A), the debtor notifies the lessor in writing that the lease is assumed, the liability under the lease will be assumed by the debtor and not by the estate." Bankruptcy Code § 365(p)(2)(B).

Here, the debtor, Kevin Anderson, filed a motion to compel USB Leasing LT to allow him to assume a lease of a 2017 Jeep Wrangler under § 365(p)(2). According to Mr. Anderson's motion, there were no overdue payments under the lease, yet when he wrote to USB Leasing offering to assume the lease USB Leasing responded that it would agree to a lease assumption only on the condition that he enter into a reaffirmation agreement pursuant to Bankruptcy Code §

---

[1] All references to the Bankruptcy Code or Code are to 11 U.S.C. § 101 *et seq*.

1

524(c). In his motion to compel, Mr. Anderson asked me to invoke the court's equitable powers under Code § 105 to force USB Leasing to enter into a lease assumption agreement without the precondition of reaffirmation. Mr. Anderson maintained that conditioning a lease assumption on reaffirmation was an "incorrect procedure."

USB Leasing filed a response to Mr. Anderson's motion to compel essentially saying it needed guidance on how to deal with consumer car leases in bankruptcy because there is no binding First Circuit authority delineating the interplay between lease assumptions under Code § 365(p)(2) and reaffirmation under § 524(c). In the absence of such authority, USB Leasing stated that its policy was to rely on *In re Creighton*, 427 B.R 24 (Bankr. D. Mass. 2007), the only reported decision by a court in this district. In *Creighton*, the bankruptcy court ruled that the lease assumption under § 365(p)(2) was a species of debt reaffirmation and in order for the lease assumption to be effective, the parties were required to comply with the reaffirmation provisions of § 524(c).[2]  *Id*. at 28.

---

[2] Bankruptcy Code § 524(c) provides:

> (c) An agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title is enforceable only to any extent enforceable under applicable nonbankruptcy law, whether or not discharge of such debt is waived, only if--
> (1) such agreement was made before the granting of the discharge under section 727 . . . of this title;
> (2) the debtor received the disclosures described in subsection (k) at or before the time at which the debtor signed the agreement;
> (3) such agreement has been filed with the court and, if applicable, accompanied by a declaration or an affidavit of the attorney that represented the debtor during the course of negotiating an agreement under this subsection, which states that--
> (A) such agreement represents a fully informed and voluntary agreement by the debtor;
> (B) such agreement does not impose an undue hardship on the debtor or a dependent of the debtor; and
> (C) the attorney fully advised the debtor of the legal effect and consequences of--
> (i) an agreement of the kind specified in this subsection; and
> (ii) any default under such an agreement;
> (4) the debtor has not rescinded such agreement at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later, by giving notice of rescission to the holder of such claim;

As a result of USB Leasing's response to his motion to compel, Mr. Anderson, apparently experiencing a change of heart, filed a withdrawal of his motion, accompanied by a motion to extend the time for him to complete a reaffirmation agreement with USB Leasing with respect to his car lease.

I scheduled the debtor's motion to compel, the debtor's withdrawal of that motion and his motion to extend the reaffirmation deadline for hearing to take the opportunity, as part of my ruling on these matters, to articulate my understanding of the relationship between motions to approve the assumption of car or other personal property leases under Bankruptcy Code § 365(p) and reaffirmation agreements under § 524(c). I presented my rulings on the record at a hearing on August 6, 2019, but promised to issue this written memorandum in order to elucidate my analysis.

That analysis involves two inquiries. The first is whether lease assumption agreements under Code § 365(p)(2) are subject to the requirements for debt reaffirmation set forth in Code § 524(c) or, put another way, whether reaffirmation is a prerequisite for lease assumption. Assuming the answer is no, the second consideration is whether, upon execution of a lease assumption agreement pursuant to § 365(p)(2), the debtor's personal liability under the assumed lease is subject to his bankruptcy discharge.

---

(5) the provisions of subsection (d) of this section have been complied with; and
(6)(A) in a case concerning an individual who was not represented by an attorney during the course of negotiating an agreement under this subsection, the court approves such agreement as—
(i) not imposing an undue hardship on the debtor or a dependent of the debtor; and
(ii) in the best interest of the debtor.
(B) Subparagraph (A) shall not apply to the extent that such debt is a consumer debt secured by real property.

Bankruptcy Code § 524(c).

As to the first inquiry, my analysis begins as it must with the statutory text. Section 365(p) was added to the Bankruptcy Code as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") to fill a void in the existing law by providing a vehicle for a debtor to assume leases of personal property not assumed by a chapter 7 trustee. Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109–8, 119 Stat. 23, § 309(b); *see also In re Bailly*, 522 B.R. 711, 713 (Bankr. M.D. Fla. 2014). As suggested by the enacting legislation's title, "Giving Debtors the Ability to Keep Leased Personal Property by Assumption," § 365(p) confers a benefit upon consumer debtors by establishing a simple mechanism for debtors to retain leased personal property that often may be of critical importance to them.

BAPCPA also amended Code § 362 to add a new subsection (h)(1)(A). Pub. L. No. 109-8, 119 Stat. 23, § 305(1)(C). That subsection provides for the termination of the automatic stay as to personal property of a debtor in certain instances, in the event the debtor fails to:

> file timely any statement of intention required under section 521(a)(2) with respect to such personal property or to indicate in such statement that the debtor will either surrender such personal property or retain it and, if retaining such personal property, *either* redeem such personal property pursuant to section 722, enter into an agreement of the kind specified in section 524(c) applicable to the debt secured by such personal property, *or assume such unexpired lease pursuant to section 365(p) if the trustee does not do so, as applicable* . . .

11 U.S.C. § 362(h)(1)(A) (emphasis added). The purpose of the enactment of § 362(h) was to bring the automatic stay provisions in line with the new § 365(p). The important point for purposes of the issues under consideration here is that the use of the either/or structure in the statute makes it clear that reaffirmation and lease assumption are alternative, independent procedures. *In re Abdemur*, 587 B.R. 167, 171 (Bankr. S.D. Fla. 2018). If lease assumption required compliance with the reaffirmation procedures of Code § 524(c), then it would have been

4

unnecessary for Congress to amend § 362 to include the failure to assume a lease as a separate ground for stay termination.

Furthermore, imposing a requirement of reaffirmation on lease assumption would add a timing requirement to Code § 365(p)(2) that appears nowhere in the statute. *See In re Ebbrecht*, 451 B.R. 241, 247 (Bankr. E.D.N.Y. 2011). Reaffirmation agreements are effective only if entered into prior to the entry of the debtor's discharge. Bankruptcy Code § 524(c)(1). A discharge in a run of the mill chapter 7 case will typically enter 60 days after the initial meeting of creditors under Code § 341, which usually takes place about 40 days after the filing of the bankruptcy petition commencing the case. Fed. R. Bankr. P. 4004(a); Fed. R. Bankr. P. 2003(a). So in the vast majority of chapter 7 cases, a debtor receives a discharge between three and four months from case commencement. Tying lease assumption to reaffirmation would mean a debtor must complete both the lease assumption process and enter into a reaffirmation agreement within 100 days of filing his bankruptcy petition. Since a debtor has no control over how long a lessor will take to respond to a notice under § 365(p)(2)(A) that the debtor wishes to assume a lease, this can be a highly prejudicial limitation on the entire § 365(p)(2) scheme and a surprising one indeed as the statute itself contains no time element whatsoever. *See Ebbrecht*, 451 B.R. at 247; s*ee also* Laura B. Bartell, *Making Assumptions About the Individual Debtor's Right to Assume Under § 365(p)(2)*, 85 Am. Bankr. L.J. 265, 278-79 (2011). Unlike the lease assumption process, the reaffirmation process provides for extensions of time when, for example, the creditor is taking too long to complete the reaffirmation paperwork and a discharge order is looming. *See* Fed. R. Bankr. P. 4004(c)(1)(J) and 4008(a).

The only time element remotely relevant to Code § 365(p)(2) appears in § 365(p)(1) which restricts a chapter 7 debtor from even attempting to assume a personal property lease until

5

after a trustee rejects or fails to assume it on behalf of the estate. A chapter 7 trustee has a minimum of 60 days from the entry of the order for relief to decide whether to assume or reject a lease of personal property and may seek to extend that period. *See* Bankruptcy Code § 365(d)(1). Assuming the trustee does not seek an extension beyond the statutory 60 days and the lease is deemed rejected by the trustee's inaction, this would leave the debtor a mere 40 days to achieve lease assumption and reaffirmation. Adding injury to insult, should the trustee obtain, say, a 45 day extension of the statutory period, during which the debtor remains disabled from attempting to assume the lease, while at the same time the debtor's discharge enters, and then the trustee rejects the lease, the debtor will effectively have been deprived of any opportunity whatsoever to obtain the benefits of § 365(p)(2). *See* Bartell*, supra* at 279.

Further, if lease assumption requires reaffirmation and thus must occur pre-discharge, § 365(p)(2)(C), which offers lessors a safe-harbor from discharge violations while negotiating a lease assumption, would be meaningless. Post-discharge, it would be too late for the parties to be negotiating a lease assumption since reaffirmation is no longer possible. *See* Code § 524(c)(1). It is a bedrock principle of statutory construction that a statute should not be interpreted in a manner that renders any part of it ineffective. *Corley v. U.S.*, 556 U.S. 303, 314 (2009) (citing *Hibbs v. Winn*, 542 U.S. 88, 101 (2004) (quoting 2A N. Singer, *Statutes and Statutory Construction* § 46.06, pp.181–186 (rev. 6th ed.2000)) ("[A] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant ....") (footnote omitted). Untethering lease assumption from reaffirmation so as to permit lease assumption at any time, which is a more contextually accurate reading of § 365(p)(2), spontaneously gives meaning to § 365(p)(2)(C).

Additionally, requiring compliance with both § 524(c) and § 365(p)(2) before a personal property lease can be assumed would render assumption for a chapter 7 debtor drastically different from assumption for debtors or trustees in chapter 11 and chapter 13 cases. *See* Bartell*, supra*, at 279. Congress chose to put the provision enabling chapter 7 debtors to assume leases of personal property in § 365 of the Code. Section 365 contains 16 subsections and exponentially more sub-subsections dealing with the assumption, rejection and assignment of leases and executory contracts in all cases under the Code by trustees, debtors in possession and debtors. Nowhere in § 365 is there a requirement that lease assumptions be accompanied by or constitute debt reaffirmation. On the contrary, assumption under Code § 365 is generally understood to create a post-petition obligation that is not subject to discharge. *Ebbrecht*, 451 B.R. at 247. A debt not subject to discharge need not be reaffirmed. *Id.* Unless Congress intended two different definitions of "assume" within § 365, a statutory anathema, assumption under § 365(p)(2) cannot require compliance with § 524(c). Bartell*, supra*, 279.

Finally, as noted above, the title of the section enacting § 365(p) in the BAPCPA legislation was "Giving Debtors the Ability to Keep Leased Personal Property by Assumption." Bankruptcy Abuse Prevention and Consumer Protection Act, Pub. L. No. 109-8, 119 Stat. 23, § 309(b) (codified as amended at Bankruptcy Code § 365(p)). As the title suggests, the amendment was enacted to facilitate the ability of debtors to retain leased property. Congress was conferring a gift upon chapter 7 debtors. Reaffirmation, on the other hand, is no gift to debtors. Subsection (c) of Code § 524, along with its companion subsection (d), drives home the unmistakable message that the process of reaffirming an otherwise dischargeable debt is meant to be complicated and off-putting for debtors. It reflects a clear policy bias in favor of discharging debts that are dischargeable. Preparing reaffirmation agreements is time consuming and requires

7

great attention to detail. Lawyers who represent consumer debtors are happy to avoid the process.[3] Interpreting § 365(p)(2) as an overlay upon § 524(c), thereby requiring *both* lease assumption *and* reaffirmation, would completely undercut the purpose of § 365(p)(2). *See* Bartell, *supra,* at 279.

As USB Leasing has pointed out, the only reported decision in this district dealing with the interplay between § 365(p)(2) and § 524(c) is *In re Creighton*, 427 B.R. 24 (Bankr. D. Mass. 2007). *Creighton* involved motions to approve the assumption of two pre-petition motor vehicle leases by a debtor. The court noted that Code §524(c) provides that debts arising under certain post-petition agreements are not enforceable unless specified procedures are followed with respect to those agreements, which is true for any "agreement between a holder of a claim and the debtor, the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title." *Id.* at 27 (quoting Code § 524(c)). As the leases in question were entered into pre-petition and thus the liability thereunder was dischargeable, the court observed that any subsequent agreement involving those leases would necessarily be based, at least in part, on a dischargeable debt. The court thus concluded that assumption agreements are a "species of reaffirmation agreement," reasoning that a lease assumption is "an agreement to be bound by a debt that arose prepetition, when the lease was originally entered into and promises exchanged in consideration of each other, and that would otherwise and normally be dischargeable." *Id.* at 28. Thus, the court ruled, § 365(p)(2) assumption agreements, when not excepted from discharge by § 523(a), are agreements to which § 524(c) pertains. *Id*.

*Creighton* offers a thoughtful, creative and comprehensive analysis of the interplay between §§ 365(p)(2) and 524(c). Nevertheless, while its conclusion that subjecting lease

---

[3] Many consumer debtor attorneys are, to say the least, reluctant about certifying that a reaffirmation agreement does not impose an undue hardship on a debtor. *See* Code § 524(c)(3)(B).

8

assumption agreements by individual chapter 7 debtors to the rigors and protections (and disincentives) of debt reaffirmation may reflect laudable bankruptcy policy, I cannot square the holding in *Creighton* with the requirements of the statutes as discussed above. Lease assumption under § 365(p)(2) and reaffirmation under § 524(c) are independent procedures. To require a § 365(p)(2) lease assumption to conform to the strictures of § 524(c) reaffirmation would do excessive violence to the statutory scheme, not to mention to the policies underlying the statutes. The post-petition assumption of a pre-petition lease transforms the obligations under the assumed lease into a post-petition obligation. Post-petition obligations are not subject to discharge and thus, are not eligible for reaffirmation. *See* Bartell, *supra* at 281-82. That is why an estate representative's assumption of a pre-petition lease typically creates an administrative expense claim in the event of subsequent default. *See In re Michalek*, 393 B.R. 642, 644 (Bankr. E.D. Wis. 2008) ("[T]he bankruptcy code does not clearly indicate how damages for the breach of an assumed lease are treated[,]" but "a post-petition breach of an assumed lease may give rise to an administrative claim under 11 U.S.C. § 503(b)(1)(A), which allows for payment of 'the actual, necessary costs and expenses of preserving the estate.'"). Code § 365(p)(2)(B) provides that upon assumption, "the liability under the lease *will be* assumed by the debtor and not the estate." (emphasis added). This indicates that the liability becomes a post-petition obligation.

      The decisions in *Ebbrecht* and *Abdemur* are instructive. In *Ebbrecht*, a chapter 7 debtor indicated on his Statement of Intention that his vehicle lease from BMW would be assumed pursuant to § 365(p)(2). Three months after the filing of the petition, BMW filed a reaffirmation agreement the subject of which was the lease listed on the Statement of Intention. The court denied approval of the reaffirmation agreement, holding it was not required in connection with lease assumptions under § 365(p)(2). *Ebbrecht*, 451 B.R. at 248. The court identified a number

9

of key differences between § 524(c) and § 365(p)(2) which supported the conclusion that the two sections are unrelated. First, while § 524 requires reaffirmation before discharge, lease assumption under 365(p)(2) does not. *Id.* at 247. Second, although substantial disclosures are required for a reaffirmation agreement under § 524(c), § 365(p) does not require any disclosure. *Id*. And third, the court must ultimately determine whether to accept a reaffirmation agreement but need have no involvement in review or consideration of lease assumptions, which it described as a "handshake" process. *Id*. The *Ebbrecht* court determined that the reaffirmation and assumption provisions are not interchangeable and that "Congress clearly intended to provide two separate provisions covering two very different situations, and adopted two very different procedures." *Id.*

The bankruptcy court in *Abdemur* applied similar reasoning in holding that post-discharge *in personam* liability under an assumed lease is not dependent on adherence to the reaffirmation provisions of Code § 524(c). In *Abdemur*, a chapter 7 debtor and Toyota entered into an assumption agreement pursuant to which the debtor assumed a motor vehicle lease listed on the debtor's Statement of Intention. After realizing that he was unable to continue making payments under the lease assumption agreement, but before his bankruptcy discharge entered, the debtor returned the vehicle to Toyota. Toyota sought a ruling that the automatic stay did not apply to its efforts to dispose of the car and to pursue the debtor for any remaining amounts due under the lease. The debtor argued that he had no *in personam* liability under the lease because he had not reaffirmed the lease in accordance with Code § 524(c) and, thus, the liability claim under the lease would be discharged when he received his discharge. The court, following much of the reasoning in *Ebbrecht*, disagreed with the debtor, holding that lease assumption had

nothing to do with reaffirmation. *Abdemur*, 587 B.R. at 172-73. The court also ruled that once the lease was assumed, the debtor's liability would survive discharge. *Id*.

*Abdemur* offers a neat segue into the second aspect of my inquiry. Having concluded that the § 524(c) reaffirmation process has no place in a § 365(p) lease assumption, what affect does a lease assumption have on a debtor's discharge? The court in *Abdemur* concluded that lease assumption under § 365(p), like lease assumption under § 365(a), creates a post-petition liability that survives discharge and thus permitted the leasing company to pursue collection against the debtor personally upon a post-assumption default. *Id*.

It is a fair point to note that lease assumption by an estate representative like a trustee under § 365(a) requires court approval, while personal property lease assumption by a chapter 7 debtor under § 365(p)(2) appears to be an extra-judicial process. *See Ebbrecht,* 451 B.R. at 245. This distinction could justify the conclusion that the former created a post-petition liability, while the latter did not. The district court in *Thompson v. Credit Union Fin. Grp.,* 453 B.R. 823 (W.D. Mich. 2011), reached precisely this conclusion.

In *Thompson*, the chapter 7 debtor assumed a car lease shortly after filing bankruptcy but soon thereafter concluded he could not afford to keep the car and surrendered it to the leasing company. After his discharge entered and the case was closed, the leasing company notified the debtor that it intended to collect the unpaid portion of the lease debt from him. The debtor moved in the bankruptcy court to have the leasing company held in contempt for violating the discharge injunction under Code § 524(a). The leasing company argued that by virtue of the lease assumption under § 365(p), the debtor's liability was not subject to the discharge.

The bankruptcy court, *see In re Thompson*, 440 B.R. 130 (Bankr. W.D. Mich. 2010), *rev'd and remanded sub nom. Thompson v. Credit Union Fin. Grp.*, 453 B.R. 823 (W.D. Mich.

11

2011), applying reasoning similar to the court in *Abdemur*, ruled that the assumption by a chapter 7 debtor under § 365(p) was no different from assumption by a trustee under § 365(a), and that each created a post-petition liability that was not subject to discharge. *In re Thompson*, 440 B.R. at 132-33. On that basis, the court denied the debtor's contempt motion. *Id*. at 133.

On appeal, the district court reversed. *Thompson v. Credit Union Fin. Grp*., 453 B.R. 823 (W.D. Mich. 2011). In its opinion, the court noted that before a chapter 7 debtor obtains the opportunity to propose a lease assumption under § 365(p), the chapter 7 trustee must reject the lease, either affirmatively or by inaction as provided for in § 365(d). *Id*. at 826. The trustee's rejection, in turn, triggers the creation of a pre-petition liability for any claims by the lessor arising from such rejection. *Id*.; *see also* Code § 365(g)(1). That liability is dischargeable. Against this backdrop, the district court refused to consider the subsequent extra-judicial process of a debtor's entering into a lease assumption agreement with a lessor as anything more than an agreement "suspending what would otherwise be the lessor's right to retrieve the leased property—a right expressly recognized by section 365(p)(1)—on mutually agreed terms, but leaving unaffected the ultimate right of discharge triggered by the Trustee's rejection of the lease . . . ." *Thompson*, 453 B.R. at 829. The district court also emphasized the difference between the lease assumption processes under § 365(a) and § 365(p)—the former expressly requires court approval while the latter does not. *Id*. at 828. The court refused to deprive debtors of their discharge rights with respect to car lease debts, which the court considered an important aspect of the Code's fresh start policy, based on a private assumption agreement which, if subsequently breached, "could unwittingly bind [debtors] to section 365(p) assumptions that leave them not only without their leased car but also with all the liability they would have had absent the bankruptcy filing." *Id*. at 829.

12

I believe it is possible to harmonize the approaches taken in *Abdemur* and by the district court in *Thompson*. While § 365(p)(2) does not require court involvement in the lease assumption process, it certainly does not prohibit it. USB Leasing had the right idea when it attempted to condition its willingness to allow Mr. Anderson to assume the lease upon his reaffirming the debt, it merely opted for the wrong procedure. Rather than imposing the burdens, hurdles and time-constraints of reaffirmation, a lessor wishing to insure that an assumed lease survives a lessee's bankruptcy discharge need only insist upon a court order saying so. A debtor could certainly choose to withdraw his offer to assume if he preferred to preserve his discharge rights. But if both sides agreed, the matter could be presented to the court. Permitting the parties to seek court approval of a lease assumption agreement on terms that are mutually acceptable to them is the most efficient way to insure that the lease assumption process does what it is intended to do—afford debtors a shot at retaining leased personal property.

What if, despite their best efforts, the parties cannot agree on the terms of a lease assumption? What if Mr. Anderson, who was current on his car lease payments, had offered to assume the lease and USB Leasing simply refused to go along? Recall that the § 365(p)(2) process is voluntary and neither party may compel the other to enter into a lease assumption agreement. Would Mr. Anderson be facing repossession of his car? I have heard leasing companies argue that the failure of a debtor to consummate a lease assumption triggers the operation of Code § 521(d), the provision which reinstates the enforceability of so-called *ipso facto* clauses in leases. These are clauses found in many contracts that make bankruptcy or insolvency an automatic event of default. Bankruptcy Code § 365(e)(1) renders *ipso facto* clauses in leases generally unenforceable once bankruptcy ensues. But Code § 521(d) taketh away what § 365(e)(1) giveth if a debtor either (a) fails to timely redeem or reaffirm as to a debt

secured by a purchase money security interest in personal property or (b) fails to timely take the action specified in Code § 362(h)(1) and (2) as to leases of personal property. In either of these circumstances, the *ipso facto* clause springs back to life.[4]

Is a debtor justified in the fear that the failure to successfully consummate a Code § 365(p)(2) lease assumption will bring a 3:00 a.m. visit from the repo man? With respect to purchase money security interests in vehicles owned outright by debtors, it appears to be settled that under Massachusetts law a secured party is prohibited from self-help repossession unless the debtor is in payment default or the vehicle's value has been substantially impaired. Mass. Gen. Laws. ch. 255B § 20B(a). But with respect to car leases, there is some uncertainty as to whether state law similarly protects debtor lessees.[5]

I will leave this issue unresolved for the moment because it is not necessary to invoke state law based on the facts here. All Code § 521(d) requires in order to avoid resurrecting the *ipso facto* clause in personal property leases is for the debtor to timely take the actions required

---

[4] By using the either/or structure, § 521(d), just like § 362(h)(1)(A) discussed above, lends further support to the notion that reaffirmation and lease assumption are alternative, not cumulative, procedures.

[5] The issue is whether a car lease constitutes a retail installment contract within the meaning of the state statute. A non-precedential decision in *Marine Midland Bank NA v. Moran*, 1994 Mass. App. Div. 167 (1994) held that the car lease in that case did not qualify as a retail installment contract under Mass. Gen. Laws ch. 255B, § 1. *See also*, *Aguiar v. Santander Consumer USA Inc.*, No. CV 17-11349-GAO, 2018 WL 4119684, at *2 (D. Mass. Aug. 29, 2018).

in § 362(h)(1)[6] and (2). Here, Mr. Anderson did precisely what he was required to do under § 362(h)(1).[7]

Mr. Anderson's bankruptcy case was initiated on April 12, 2019. His Official Form 108 Statement of Intention was due to be filed by May 13, 2019. (Order to Update ECF #4). He filed it on May 1, 2019, listing his lease with USB Leasing and stating his intention to assume that lease under § 365(p)(2). He notified the lessor of his desire to assume the lease by letter dated May 15, 2019. This was all that was required to avoid the draconian consequences of § 521(d). There is no requirement in either § 521(d) or § 362(h) that the lease assumption be consummated. All that is required is that the debtor do his part. A lessor who refuses to go along with a § 365(p)(2) lease assumption cannot be compelled to do so, but neither will it receive the gift of an enforceable *ipso facto* lease clause. Thus, as long as Mr. Anderson remains current on his car lease payments and any other obligations under his lease, USB Leasing may not default him and attempt to take his car for having filed a bankruptcy petition.

So to summarize, the appropriate method for a personal property lease to survive the chapter 7 bankruptcy filing and discharge of the debtor-lessee where the trustee fails to assume the lease is for the debtor to include the lease obligation on his Official Form 108 Statement of Intention and to check the box "yes" under the heading "will the lease be assumed" and then for

---

[6] Code § 362(h)(1) provides that the automatic stay "is terminated with respect to personal property of the estate or of the debtor securing in whole or in part a claim, or subject to an unexpired lease, . . if the debtor fails within the applicable time set by section 521(a)(2)—(A) to file timely any statement of intention required under section 521(a)(2) with respect to such personal property or to indicate in such statement that the debtor will either surrender such personal property or retain it and, if retaining such personal property, either redeem such personal property pursuant to section 722, enter into an agreement of the kind specified in section 524(c) applicable to the debt secured by such personal property, or assume such unexpired lease pursuant to section 365(p) if the trustee does not do so, as applicable; and (B) to take timely the action specified in such statement, as it may be amended before expiration of the period for taking action, unless such statement specifies the debtor's intention to reaffirm such debt on the original contract terms and the creditor refuses to agree to the reaffirmation on such terms." 11 U.S.C.§ 362(h)(1)(A) and (B).

[7] Code § 362(h)(2) does not apply to this case.

the debtor to invoke the procedures set forth in Code § 365(p)(2) and, if an agreement is reached, seek court approval of the lease assumption which may include a request for a determination that the assumed lease is a post-petition obligation of the debtor. A reaffirmation agreement in such situations is inappropriate and will not be accepted. Should a lessor refuse to enter into a § 365(p)(2) lease assumption, the court will not compel the lessor to do so, however, the failure to complete the lease assumption process under such circumstances will not revive an otherwise unenforceable *ipso facto* provision of the lease.

      As a result of the foregoing, at the hearing on August 6, 2019, Mr. Anderson's withdrawal of his motion to compel USB Leasing to enter into a lease assumption agreement was accepted (I would have denied the motion anyway as the lease assumption process is entirely voluntary). His motion to extend the time to complete the reaffirmation process with USB Leasing was denied as unnecessary since reaffirmation of an assumed lease is inappropriate. Finally, I granted the parties leave to file a joint motion to approve a lease assumption agreement

pursuant to Bankruptcy Code § 365(p)(2) should they, in light of my rulings, reach such an agreement.

Entered at Boston, Massachusetts this 4th day of September, 2019.

By the Court,

Melvin. S. Hoffman
United States Bankruptcy Judge

Counsel Appearing:   Gary W. Cruickshank, Esq.
Boston, MA
  for Kevin Anderson

Joseph M. Dolben, Esq.
Warwick, RI
  for USB Leasing LT